ROBERT A. YOUNG, ADMINISTRATOR DE BONIS NON, WITH WILL ANNEXED, OF ANDREW YOUNG, APPELLANT, VS. HENRY McKINNIE, ADMINISTRATOR OF RICHARD McKIN-NIE, APPELLEE.

1. Testator devised as follows:—" It is my will and desire that my property, in cluding lands, tenements, negroes, horses, and stock of every kind, and everything of value that I may die seized and possessed of, shall be equally divided between my wife E., my daughter E. W., and my son R." *Held,* That this clause of the will, conveys a present gift to the legatees, and is not controlled by the next clause, in which the testator says:—" It is my will and desire that all my property be kept together, for the use and benefit of my said wife and children, unless my wife should marry, or my children become of age, in which event, or events, I wish the property divided as above;" the sole effect of this latter clause being merely to postpone the division.

2. *Held, also,* That upon the death of the daughter, E. W., under age, unmarried, and without issue, her brother, R., became, by the laws of Florida, her sole heir; and that upon the death of the mother, E., leaving a second husband and her son R. surviving, that R. became sole heir to the whole real estate of the testator.

3. It is a general rule that a legacy shall be taken to vest at the death of the testator, unless manifestly against the intention of the will.

4. When a testator directs the whole of his property to be kept together, for the

use and benefit of his wife and children, until the happening of certain events, making no other provision for their support and maintenance, such circumstances are indicative of an intention on the part of the testator to give the *principal*, and will have the effect to vest the legacy.

5. A devise in the following words: "Also, I direct that all the property, real or personal, that I obtained from the estate of B. M., deceased, be returned to R. M., minor heir of said B. M., or such portion thereof as I may have in my possession," is specific, and is not liable to abatement for the benefit of the residuary legatees. *Held, also,* That under this clause of the will, only such property as had been received by testator, and remained in specie in his possession at the time of his death, passed to the legatee, and that slaves, the after issue of those received from the estate of B. M., were not included in the bequest.

6. The decree of a Court directing the sale of real estate, for the purpose of division between an infant and others, to which the infant was not made a party, is not conclusive upon the infant, so far as such decree undertakes to pronounce upon the extent of his interest; but if he take, under the sales made in pursuance thereof, he may be estopped from saying that the sales are void; for by receiving so much of the proceeds as properly belong to him, he affirms the sale, but is not estopped from contesting the other portions of the decree.

7. The intention of the testator to dispose of property not his own, thereby imposing upon the legatee the obligation to elect, must be *expressed* or *clearly implied* in the will itself. Parol evidence cannot be received to establish it.

8. In stating an account against an administrator, under the laws of this State, annual rests are to be made, and interest charged on the balance found due at the period of each rest.

Appeal from Circuit Court, Jackson County.

The original bill was filed by Richard McKinnie, by his next friend, Henry McKinnie, and on his death the cause was revived by said Henry McKinnie, as his administrator.

The facts as they appear from the bill, answer, depositions, &c., are as follows.

Barney McKinnie, father of Richard McKinnie, died in the fall of 1833, leaving a will, as follows :

* * * * "To wit, Imprimis. It is my will and desire that my property, including lands, tenements, negroes, horses and stock of every kind, and everything of value

544 · SUPREME COURT,

Young's Adm'r. vs. McKinnie's Adm'r.—Statement of Case.

that I may die seized and possessed of, shall be equally divided between my wife Elizabeth McKinnie, my daughter Elizabeth Washington, and my son Richard : It is further my will and desire, that all my property be kept together for the use and benefit of my said wife and children, unless my said wife should marry, or the children become of age, in which event or events, I wish the property divided as above : I hereby appoint my friend and relative, Bennet Fer.il, my executor, and my wife Elizabeth, executrix of this my last will and testament."

Shortly after the death of the testator, Elizabeth Washington, being an infant, died intestate. Neither of the persons appointed to execute the will ever qualified or acted under it. After the death of Elizabeth Washington, Mrs. McKinnie intermarried with Andrew Young, appellant's testator ; and on the 20th November, 1834, the said Andrew Young was appointed administrator, with the will annexed, of the estate of Barney McKinnie.

On the 12th January, 1835, an order was made by the County Court of Jackson County, on the *ex parte* petition of Andrew Young, for the division of the McKinnie estate between Richard McKinnie, and Andrew Young, in right of his wife Elizabeth. The commissioners appointed under the order divided the negroes between the parties in equal moities and recommended a sale of the perishable property, consisting of stock, cotton, corn, &c., and the land, S. E. ¼ Sec. 29, T. 6, R. 11, N. and W., in order that a division of the proceeds might be made. One half of the negroes valued at $3.100 was assigned to Richard McKinnie, and thereafter held and hired out by Andrew Young as the property of said Richard ; and the other half was assigned to Andrew Young, in right of his wife, who thereafter held and possessed them as in his own right.

In the year 1837, Mrs. Young, formerly Mrs. McKinnie,

departed this life leaving Richard McKinnie her sole surviving child.

On the 9th February, 1835, Andrew Young, as administrator, sold all the personalty of the McKinnie estate other than the slaves. On the 29th January, 1840, Andrew Young, believing himself entitled to one-half the realty, filed a petition *ex parte* in the County Court, praying a sale thereof for the purpose of effecting a division between himself and Richard McKinnie, in which he recites and relies on the recommendation of the Commissioners, appointed under the order of the 12th January, 1835, and on the 4th February, 1840, a decree was made by the County Court pursuant to the prayer of the petition. On the 5th February, 1840, the land was sold and purchased by Benjamin Wynn for $1,944.

From the date of the decree of the County Court, January 12th, 1835, up to his death, Andrew Young regarded and treated one-half the McKinnie estate as his.

On the 2d April, 1841, Andrew Young died, leaving a will as follows :

* * * * "First—I direct that all my debts and funeral expenses be paid as soon after my decease as possible, out of the first monies that shall come into the hands of my executors out of any portion of my estate real or personal. Also I direct that all the property, real or personal, that I obtained from the estate of Barney McKinnie, deceased, be returned to Richard McKinnie, minor heir of said Barney McKinnie, deceased,—or such portion thereof as I now have in my possession : Also I direct that the remainder of my property which I have accumulated be brought to an equal division among my legal heirs ; therefore to accomplish that end I direct that a fair valuation or appraisement be made by three judicious persons, appointed for that purpose, of all my said estate, including my

household furniture, and other property real or personal, and after being signed with their names that a copy of the same shall be given by them to each of my executors; and I direct that all that portion of property which I have bequeathed to my legal heirs, real or personal be disposed of as the law directs, in such cases made and provided. And I do hereby ordain my neighbor, John Brett, jr., executor of this my last will and testament."

At the date of his will and death, he had no property in his possession which he had obtained from the McKinnie estate, in right of his wife, except the negroes assigned him on the division, under the decree of the County Court.

The negroes assigned to Richard McKinnie upon the division, were delivered to his guardian, the said Henry McKinnie, by Brett, Executor of Young, on the 1st January, 1843; and those assigned to Young, were delivered to Richard McKinnie's guardian, on the 1st January 1848, as his legacy under Young's will. The value of the negroes, both sets, at Young's death, was $8,175. The hires of all the negroes have been received by said Richard, his guardian, or administrator, since Young's death.

From the date of Young's marriage to his death, Richard was supported by him.

Between the division under the decree of the County Court, and Young's death, two negroes, Tom and Amanda, were born of a negro woman assigned to him on said division, and were delivered by John Brett, Executor of Young, to Richard's guardian as a portion of his legacy under Young's will.

The bill insists that complainant is entitled to two-thirds of the personal estate of his father, B. McKinnie—one-third as a legatee, and the other one-third as distributee of his sister, Elizabeth Washington; and the whole of the land, as devisee under his father's will, and heir of his mother

and sister: Prays that the decrees of the County Court may be declared null and void; a new division of the es-. tate made, and that appellant be decreed to account, &c.

The answer insists that Complainant was entitled to only one-half of the personal estate of B. McKinnie; that under the will Elizabeth Washington's interest was contingent, and on her death, before the marriage of the widow, fell into the residue of the estate for the benefit of the other legatees. That Complainant should not be permitted to enforce his rights under his father's will, and as heir of his sister and mother—as to the realty—and yet take his legacy under Young's will; and that if he renounces his legacy under Young's will, he must account for the value of Young's interest in the slaves received by him, as well as their hires. That Complainant should account for the value and hires of the two negroes, Tom and Amanda, on the ground that they did not pass by the legacy in Young's will. That the property received by Complainant under Young's will should be equally liable for the debts due by Young's estate, as that bequeathed to the "legal heirs." And that Complainant is liable to Young's estate for maintenance, &c.

Decree of Circuit Court, November Term, 1853:

1. That the legatees under McKinnie's will took vested legacies and contingent interests in the realty; that on the death of Elizabeth Washington, R. McKinnie, as her sole distributee, was entitled to her share of the personal estate; and that her interest in the land sunk into the estate for the benefit of the other divisees.

2. That on the death of Mrs. Young, her interest in the land descended to Richard as her sole heir.

3. That Richard was not bound to elect between his rights as set forth in the bill, and his legacy under Young's will.

4. That he took his legacy without liability to contribute to Young's debts.

5. That negroes, Tom and Amanda, passed under Young's bequest.

6. Decrees of County Court declared null and void.

7. General account ordered : " and that the master take an account of all the property real and personal that said Andrew Young was entitled to, or had received, or had in possession in right of his wife, from said estate of said Barney McKinnie."

*R. L. Campbell & G. S. Hawkins*, for Appellant.

*J. H. DuPont* and *Archer & Papy* for Appellee.

DOUGLAS, J., delivered the opinion of the Court.

This case was brought up by appeal from the Circuit Court of Jackson County, taken pursuant to the provision of the 3d section of the act of the last session of our General Assembly, (see Pamplet Laws, 101,) and the first question presented for our consideration, is whether the legacy to Elizabeth Washington McKinnie, under the will of Barney McKinnie, was as to the personalty a vested legacy ; and we think it was, and that at her death it passed to Richard McKinnie, as her sole heir and distributee. The words of the will are : "It is my will and desire that my property, including lands, tenements, negroes, horses, and stock of every kind, and everything of value that I may die seized and possessed of, shall be equally divided between my wife, Elizabeth McKinnie, my daughter, Elizbeth Washington, and my son Richard." This clause, standing alone and by itself, it is admitted by the learned counsel who argued the cause for the appellant, imports a present gift ; but they contended, with great zeal and ability, that it is controlled by the next clause, in which the

testator says : " It is further my will and desire that all my
property be kept together, for the use and benefit of my
said wife and children, unless my wife should marry, or
my children become of age, in which event, or events, I
wish the property divided as above," and that no interest
vested until one of these events occurred; but to this
view of the matter we cannot assent.   It renders the first
clause entirely nugatory, although, so far as the division is
concerned, entirely consistent with it.   The first clause
amply provides for the division.   The words in the second,
" in which event, or events, I wish the property divided as
above," strike us as redundant, the sole effect of this
second clause being, as we think, merely to postpone the
division, because the testator believed it would be more
beneficial to his wife and children to have the property
kept together; and it is worthy of observation that he gives
them *at once the whole income* of the estate—*all the use
and benefit of it.*   He does not provide for a future division
of the income amongst them, or make any other provision
for their maintenance, or for the education of his children,
or use the terms of *strict condition* upon which Ch. Justice
Ruffin, in Anderson vs. Felton *et al.*, Battle N. C. Rep.,
58, cited by the learned counsel, laid so much stress.   It
is a general rule that a legacy shall be taken to vest at the
death of the testator, unless manifestly against the inten-
tion of the will.   1 Roper on Legacies, (2d American from
4th London Ed.,) 555, 556.   The cases, too, of Gaskell vs.
Harmon, 6 Ves., 159; Stuart vs. Bruere, (in note;)  Faulk-
ner vs. Hollingsworth, 8 Ves., 558; Entwistle vs. Mark-
land, and Stilwell vs. Barnard, also cited in 6 Ves., 528,
(in note,) very strongly sustain this position.   In Packham
vs. Gregory, 4 Hare, 396, cited by Roper to this point, re-
siduary personal estate was bequeathed to trustees, upon
trust, to sell, get in and invest it, and pay the interest to the

testator's wife during her widowhood, and upon her death, to *pay and divide* the whole of the trust fund unto and equally amongst all and every of the testator's nephews and nieces, share and share alike, within six months after they became entitled thereto. Sir James Wigram, V. C., held that the representatives of one of the nephews, who died in the life time of the tenant for life, were entitled to his share, *vested* on the death of the testator. In remarking upon the words "*pay and divide*," his Honor referred to his decision in Leeming vs. Sherratt, 2 Hare, 34, in which he had carefully considered the effect of those words, and observed that the authorities confirmed his view, that there was no magic in the words *pay and divide.* Even though there be no other gift than in the direction to pay or distribute *in futuro*, yet if such payment or distribution appear to be postponed, for the convenience of the fund or property, the vesting will not be deferred until the period in question. 1 Jarman on Wills, 763; 1 Roper on Vested Legacies, 557, 558. In the case before us, the time of division is postponed expressly for the use and benefit of the wife and children of the testator, and the intention is clear that they should immediately have *all the use and benefit*, all the rents and profits. The postponement of the division is of his whole estate, and he makes no other provision for the support of his wife and children, or the education of the children, as before stated, except this use and benefit, and it cannot be supposed that he intended to leave them penniless. If this view of the case be correct, then this bequest falls within the principle of that large class of cases where giving the interest on stock or money bequeathed, vests the stock or capital immediately on the death of the testator, although, by the words of the will, the enjoyment of such stock or principal is postponed to a future period; and it has in many cases been held that a

legacy, to be paid when the legatee attains his majority, is vested, though contingent. See Dawson vs. Killett, 1 Brown's C. C., (Perkins' Ed.,) 123, note A.; Burnes vs. Allen, Ib., 182, note B.; Carbin vs. Mead, 2 Ashmead, 178.

Richard McKinnie was therefore entitled to all the real estate of which Barney McKinnie died seized and possessed, one third in his own right, one third as heir of his sister, Elizbeth Washington, who died soon after her father, and one third as heir of his mother, who died in 1837. He was also entitled to two thirds of all the personal property left by Barney McKinnie; one third in his own right, and one third as heir and distributee of his said sister. Andrew Young took one third *only* of the personal property in right of his wife, the widow of Barney McKinnie; and so much of this one third as he had in his possession, he by his last will and testament, directed to be returned to Richard McKinnie. By the first clause, he directed that all his debts and funeral expenses should be paid as soon after his decease as possible, out of the first moneys that should come into the hands of his executors, out of any portion of his estate, real or personal. The second clause is as follows, viz: " Also, I direct that all the property, real or personal, that I obtained from the estate of Barney McKinnie, deceased, be returned to Richard McKinnie, minor heir of Barney KcKinnie, deceased, *or such portion thereof as I now have in my possession.*" He had previously sold all the real estate, and all the personal property except the negroes. These were in his possession at the date of his will and at the time of his death, and one third of these, which he had received in right of his wife, is, we think, all that he by his will bequeathed to Richard McKinnie. It appears from evidence in the record, (evidence *dehors* the *will*,) that Mr. Young supposed that he was entitled, in right of his wife, to

one half of all the property, real and personal, of the estate of Barney McKinnie, deceased, and it has therefore been contended that this raises a case not strictly of election, but in the nature of election,—a *quasi* election on the part of Richard McKinnie ; but it is difficult to perceive how the doctrine of election could be applied to such a case. It is, however, a sufficient answer to this position to say that there is nothing upon the face of the will of Young which seems to indicate even in the remotest degree an intention on his part to bequeath anything that was not his own.   His intention clearly was that all the property that he had received of the estate of Barney McKinnie, and was then in his possession (in specie,) should be returned to Richard McKinnie, and that the remainder of his property, which he had *accumulated*, should be brought into an equal division among his legal heirs, and were we allowed to speculate upon the matter, we see no reason to suppose that he would have made any other provision, if this alleged misapprehension had not existed ; but we are not permitted thus to speculate.   2 Story's Eq., page 486, sec. 1093, and authorities there cited.   In Stratton vs. Best, 1 Ves., 285, Lord Chancellor Thurlow said : " All the argument in Noys vs. Mordaunt, (2 Vern., 581,) and the whole suit of cases, have turned upon the expressions in the will. If I were to receive evidence of the testator's fancy, it would introduce a very desperate rule of property in this Court."   In order to impose upon a party claiming under a will the obligation of making an election, the intention of the testator must be expressed, or clearly implied in the will itself.   Roper on Legacies, (2d American from the 4th London Ed.,) 1582 to 1586 ; 3 Bac. Abr., (Ed. by Bouvier, 1848,) 316, and authorities there cited; Judd vs. Pratt, 13 Ves., 174, confirmed on appeal, 15 Ves., 390 ; 1 Jarman

on Wills, 391, 392, (and authorities there cited,) 1 Amer.
Ed.

Again, it has been insisted by the counsel of the appel-
lant that "Young's bequest to Richard McKinnie is so con-
nected with the decrees of the County Court, that if he
takes under the will, he takes under the decrees, and hence
he is estopped, until he renounces his legacy, from alleging
that the decrees are void." However this may be, he is
not, we think, estopped from saying that they are errone-
ous, at least so far as they undertook to pronounce upon
the extent of his interest; but if he takes under the sales
made pursuant to the orders of the County Court, he may
be estopped from saying that the sales are void, because
the County Court had no power to make the orders under
which the sales took place. By receiving so much of the
proceeds of the sales as properly belong to him, he af-
firms the sales; but we do not perceive how by this he
affirms anything more, or is prevented from contesting that
portion of the decrees of the County Court which declared
that Young was entitled to one-half of all the property.
Such decrees may be good, in part and void in part.

It is further insisted on behalf of the appellant, that if
Richard McKinnie takes under the will of Young, he must
take *cum onere;* that is, that "the portion given to Mc-
Kinnie must contribute to the payment of the debts; not
only the portion that actually passed, but what he intend-
ed should pass." We do not think that such was the in-
tention of the testator, or that it is the legal import of the
will, and the surrounding circumstances negative the idea.
The direction is: that all his debts and funeral expenses
be paid as soon as possible after his decease, out of the first
monies that shall come into the hands of his executors, out
of any portion of his estate, real or personal. The natural
presumption resulting from this provision is, that he meant

554 SUPREME COURT,

Young's Adm'r. vs. McKinnie's Adm'r.—Opinion of Court.

such as would naturally first come into the hands of his executors, and from the proofs in the case, it would appear that there was a large amount of the monies which resulted from the sales of the McKinnie estate, in the hands of Young at the time of his death. This would be the first to come into the hands of his executors, and next such as would be received upon a sale of the perishable property of his own estate, or from debts due his estate. But aside from this, the bequest to Richard McKinnie was specific. The remainder was to be equally divided amongst the legal heirs of the testator—it goes just where it would have gone, if nothing had been said in the will about it; and in such a case the law casts the payment of the debts first upon such remainder. 1 Roper on Legacies, 2d Amer., from 4th London Ed., 191, 192, 356 to 363 ; 2 Williams on Executors, 972, 973.

The appellant also complains of that portion of the decree of the Court below which requires the master in stating his account, to " make annual rests, charging legal interest on the balance found due at the period of each rest." Our statute, Thompson's Digest, page 207, Sec. 9, No. 1, declares that " it shall be the duty of executors, administrators and guardians, annually at the first term (of the Probate Court), to render a full and correct report of the receipts and expenditures of all estates of which they may severally have the control." No. 2, same page, provides, " that executors, administrators, and guardians, may, by leave of the Court, retain in their possession the money of any minor, paying for the same lawful interest, or shall, under the direction of the Court, put out the money of the minor at interest, upon such mortgage security as said Court shall allow, &c., &c : *Provided*, That the day of payment of the money so put out at interest, at any time, shall not exceed one year from the date of

the obligation or other security given for the same, and also at the end of each year, the interest due, if not paid, be made principal and a new bond or obligation taken, and when the 'executor, administrator or guardian, retains the money on interest himself, the same rule shall be observed, the interest being added to the principal annually, but ex- ecutors, administrators, and guardians, shall *not be liable to pay interest, except on the surplus of the estate of the deceased remaining in their hands, and unemployed as aforesaid,* after the settlement of their accounts." Duval's Compilation, 177.

That portion of the decree complained of in relation to this matter, was doubtless intended by the learned Judge who made it, to meet this peculiar provision of the statute, to which of course, we are bound to adhere: but without such a statute, we should have doubted the propriety in a case like this, of applying so stringent a rule.

The general rule of the Courts is not to allow compound interest. Hoffman's Master in Chy., 109. "There may (he says, page 104,) be a case of such gross violation, in an executor, of duty imposed upon him by the will, as to lead the Court to allow compound interest; but it is singular, that in the whole range of English decisions upon the un_ warrantable conduct of executors, in all varieties, there is but a *solitary* case giving compound interest, and that placed by the Court upon the peculiarity of the trust."

In this country, cases can be found where compound in- terest has been given, but they are generally if not univer- sally founded upon some peculiar cause, and the general rule deducible from the cases here, is believed to be the same as in England. In the case of the State of Connec- ticut, vs. Jackson, 1 John. Chy. Rep. 14, the Chancellor says, "Except in some special cases, interest upon inter- est is not allowed, and the uniform course of decisions is

22

against it, as being a hard and oppressive exaction, tending to usury." In Black vs. Blakely, 2 McCord's Chy. Rep., 9, 10, this case was cited and approved, and Mr. Justice Nott, who delivered the opinion of the Court, said: " I have never known it (*compound interest*), allowed on a mere neglect to pay over money." In Teague vs. Dendy, *Ibidem*, 207, it is said that an administrator will be charged with interest only upon the annual balances retained in his hands; and in Darrell vs. Eden, 3 DeSaussure, 241, that an executor who has unnecessarily kept money of an estate in his hands, which might have been rendered productive, will be charged with interest on the annual balances. It will occur, in a large class of accounts, (says Mr. Hoffman, page 107,) that the mode of stating, by giving interest upon each sum from the moment it is charged, will make the amount against the accounting party greater than by compounding interest at the end of each year; that is, by carrying the interest upon the balance found at the beginning of a year, into the balance struck at its close, and computing interest for the next upon the whole; *no interest being computed upon the sums when received.* This is evidently the method intended by our statute; and Mr. Hoffman, before cited, says : " It is clear that when compound interest is charged, that is the only allowable mode of doing it."

The decree in Raphael vs. Boehm, 11 Ves., 92, 111 and 112, the *solitary* case before mentioned, gave interest upon sums from the time of reception, and then half yearly rests for the purpose of compounding. And in the former as well as the latter particular, Lord Eldon, that eminent Chancellor, who, for more than twenty years, held the great seal of England, censures that decree, stating that it was peculiar in these points, and was expressed in terms which he hoped would never be found in a decree again.

We find in the record the following statement of facts, signed by the counsel of the respective parties, to-wit : " That after the division of the negroes belonging to the estate of Barney McKinnie, between Andrew Young, in right of his wife, and complainant, on the 29th January, 1835, and before the date of Andrew Young's will, two negroes, Tom and Amanda, were born of Jenny, a negro woman assigned to Andrew Young on the said division, who are still alive, and that after the death of Andrew Young, said negroes were delivered over by his executor, John Brett, to Henry McKinnie, as guardian of complainant, under the impression that they were embraced in the bequest of said Young to the complainant." In that impression we have no hesitation in saying that Mr. Brett was mistaken. They were not embraced in the bequest to Henry McKinnie, but were the property of the estate of said Young, part of the *accumulation* spoken of by him, and if they were not needed to pay his debts or funeral expenses, they passed with the remainder of his estate to his legal heirs. They were not a portion of the property which he had obtained from the estate of Barney McKinnie, but were " *servants born in his house.*" We are aware of and recognize the rule, " *Partus sequitur ventrem,*" which has been so forcibly pressed upon our attention by the counsel for the appellee, and admit that in ordinary cases the issue follows the mother, but we think it does not apply to this case. Here the intention of the testator, as declared in his will, must govern. If we could travel out of it, and seek evidence of that intention *dehors* that instrument, we might perhaps find a different intention ; but we feel ourselves constrained upon this, as upon the question of election, to confine ourselves to the will, and not to speculate upon the testator's intention, not therein expressed or clearly implied. This we deem the safest rule.

The first, second, third, fourth and sixth clauses of the decree we consider right, and they are therefore affirmed. The fifth is erroneous, and is consequently reversed, and a decree must be entered by the Court below, awarding the two slaves, Tom and Amanda, in the said fifth clause mentioned, to the appellant.

At the time of the intermarriage of the said Andrew Young with said Elizabeth McKinnie, widow of said Barney McKinnie, (which it appears, by the pleadings in this cause, took place in the fall of the year 1834,) said Young became entitled, in right of his wife, to that portion of the personal estate, including slaves, to-wit: *one third* thereof, which he, the said Barney McKinnie, by his last will and testament, bequeathed to his wife, the said Elizabeth Mc-Kinnie. For this portion of *one-third*, the said Young was not liable to account; nor was he liable to account, during the life time of his said wife, Elizabeth, for the use or hire of the same one third of the said slaves, or for the use or rent of the one third of the real estate of his said wife, of which she was seized by virtue of the devise of it to her by the said last will and testament of the said Barney Mc-Kinnie. But for the use or hire of the said one third of the said slaves, since the death of the said Young, the appellant is liable to account; and the said Young, in his life time, was, and the said appellant is, liable to account for the use and hire of the other two thirds of the said slaves; and the said Young was also liable to account for the rents and profits of the two-thirds of the real estate of the said Barney McKinnie, of which he became possessed in right of Henry McKinnie, who had become seized thereof as aforesaid, up to the time of the death of his said wife, Elizabeth, and also for the rents and profits of the whole of the said real estate from the time of the death of the said Elizabeth to the time of the sale thereof, in the year 1840; and

the said Young was also liable to account after the said sale to the time of his death, and the said appellant has, since the death of said Young, been and still is liable to account for the whole of the proceeds of all the real estate which was of the said Barney McKinnie, deceased, which was sold by the said Young, together with all the interest that has accrued on the said proceeds of the said real estate since the said sale thereof.

In taking the account for the hire of the slaves, the estate of said Young should be credited with the hire of the said Tom and Amanda, since the time of their delivery by John Brett, Executor, &c.; to the guardian of Henry McKinnie, and in taking the account of the hires of the slaves, a due allowance should be made for clothing said slaves, for loss of time by sickness or other casualties, and for the support and maintenance of such of them as by reason of infancy, old age, or other cause, were unable to earn a livelihood.

We do not doubt that the learned Judge who made the decree in the Court below, intended that the seventh clause thereof should be so construed as that the account might be taken in the manner we have indicated, except as to the two slaves Tom and Amanda; but as from the general terms in which this clause is expressed, the master might perhaps, in some particulars, construe it differently, we have considered it proper to add this much, as explanatory of our views in regard to it.

From the peculiarity of this case, the decree being in part sustained, and in part reserved, and the fact that both of the parties are administrators, we deem it right and just not to decree costs in favor of either, but to leave each party to pay his own costs.

Let the case be remanded to the Court below, for further proceedings in accordance with this opinion. *Per totam Curiam.*