96 So.2d 463 (1957)
James V. LOPEZ and Charles A. Lopez, minors, by their next friend and guardian, W.O. Mehrtens, Petitioners,
v.
Rafael W. LOPEZ, as Executor of the Estate of Joseph Anthony Lopez, Jr., deceased, et al., Respondents.
Joseph Anthony LOPEZ III, Petitioner,
v.
Rafael W. LOPEZ, as Executor of the Estate of Joseph Anthony Lopez, Jr., deceased, et al., Respondents.
Supreme Court of Florida.
July 10, 1957.
*464 W.O. Mehrtens and Evans, Mershon, Sawyer, Johnston & Simmons, Miami, for petitioners.
Mitchell, Smith & Mitchell, Atlanta, Ga., for respondents.
Anderson & Nadeau, Miami, for intervenor.
O'CONNELL, Justice.
The petitioners seek review of an order of the chancellor requiring them to make an election between taking the benefits of the will of their father, deceased, or prosecuting certain claims against their father's estate.
The petitioners are the three sons of Holles H. Lopez and Joseph Anthony Lopez, Jr. The latter is the testator of the will involved herein. Both parents of the petitioners are deceased.
The petitioners' parents were divorced in April 1952, and shortly thereafter the testator married Dorothy N. Lopez, the respondent herein. On October 28, 1953 the father died.
For simplicity we will hereafter refer to the petitioners as "the sons", the respondent as "the widow" and the testator as "the father".
At the time these actions were commenced the sons were minors, however one son's disabilities of non-age had been removed by marriage. This last mentioned son brought his action in his own name, the other two sons brought their suit through their legal guardian. The two actions were against Rafael W. Lopez, as Executor of the father's estate. Both actions sought an accounting of dividends from stocks and rents from real property belonging to them, but which had been collected by their father during his life and commingled with his own assets. The cases were consolidated for trial.
The will of the father was admitted to probate in Dade County. Thereafter the sons filed their claims in the sum of approximately $400,000. The executor objected to the claims and these suits for accounting followed.
The widow petitioned for leave to intervene alleging that she had elected to take dower and that the result of these actions would materially affect her dower. She was allowed to intervene as was a bank, a general creditor of the estate.
After filing her answer the widow filed a motion to require the petitioners to elect between taking under the provisions of *465 their father's will, and in maintaining their action for accounting. The chancellor granted this motion and in doing so said:
"* * * Plaintiffs' claim equals substantially the entire amount of the net estate. Plaintiffs' claim against the estate is not as a general creditor, but is a claim that the property of the estate is their property. That is the effect of their trust claim, because through it plaintiffs seek to have assets of the estate allocated to them ahead of creditors and not subject to the widow's dower. That, coupled with the disposition intent shown by the will, brings the case within the rule requiring election. * * *"
In their complaints the sons allege that they have since 1941 each owned stock in a Puerto Rican corporation, and have since 1944 each owned an undivided 1/3 interest in certain income producing real property in Dade County.
It further appears that prior to the spring of 1952 the father had acted as the natural guardian of the sons; that he was then appointed as the legal guardian of the sons in the County Judge's Court of Indian River County, Florida, and that he had, as guardian, collected rents and dividends due the sons. It is alleged that no accounting of any kind was ever made by the father of the sons' affairs as handled by him, either as natural or legal guardian. It is charged that the father commingled, with his own assets, the trust funds received by him as natural and legal guardian for the sons.
The sons claim that there is due them approximately $400,000 less any sums which the father may have expended for their benefit from said funds. They seek to have the court declare their right to payment of these sums, as trust funds, to be superior to any claims of general creditors and superior to the widow's claim for dower, and ask that the executor be required to pay to them the sums found to be due in an accounting.
An affidavit made by an attorney for the executor shows that, using figures taken from the estate tax return, the gross estate is valued at approximately $848,000; that if the sons' claims are not given priority the widow's dower would amount to approximately $282,000, and the general creditors, including the sons, would receive 50.3% of their claims; and that if the sons' claims are preferred the widow would receive only approximately $149,000 and the general creditors only 41.7% of their claims. These figures presuppose that the sons will recover the full amount of their claims of approximately $400,000.
In the will of the father he provided among other things:
(1) That all of his just debts be paid as soon as practicable; with all inheritance taxes to be paid from his residuary estate;
(2) Devised to Dorothy N. Lopez, the widow, "All of my jewelry, wearing apparel, automobiles, household furnishings, cash, bank accounts wherever situated and all property situated and located within the boundaries of the United States proper * * * and also including shares of stock and securities issued by any corporation organized under the laws of any State of the United States. * * *"
(3) Devised the residue of his estate, expressly including all real estate in Puerto Rico and all stock and securities issued by corporations organized under Puerto Rican law to his three sons, share and share alike.
The widow contends that the provisions of the will relating to her are specific bequests and that the testator clearly intended that she receive the items given her free of all claims. This contention seems to be out of place since the widow has, as she had the right to do, elected not to take under the will but to take dower instead.
However, insofar as we are able to determine, the principal contention of the widow is that the claim of the sons is plainly adverse to the terms of the will and *466 to the estate and they should be required to elect whether they wish to take under or against it.
It appears to us that the question to be answered is whether the devise to the sons by the father was intended to be in satisfaction of any claims which the sons might have against the father's estate. If it was so intended an election is required, but none is required if there was no such intention.
The doctrine of election in connection with testamentary instruments is the principle that one who is given a benefit under a will must choose between accepting such benefit and asserting some claim which he has against the testator's estate or against the property disposed of by the will. 57 Am.Jur., Wills, Sec. 1526.
Redfearn on Wills and Administration of Estates in Florida (1933), Sec. 148, describes the doctrine as follows:
"Election is an equitable doctrine in relation to wills which means a choice of one of two rights or claims, to each one of which the legatee or devisee choosing has an equal right, but both of which he cannot enjoy on account of an expressed intention on the part of the testator that he should not enjoy both."
In First National Bank of St. Petersburg v. MacDonald, 1930, 100 Fla. 675, 130 So. 596, 599, this Court said concerning this doctrine:
"* * * It has reference to the obligation imposed on a party to choose between two inconsistent or alternative rights or claims, in cases where there is a clear intention of the person from whom he derives one, that he should not enjoy both. The doctrine of election presupposes a plurality of gifts or rights, with an intention, expressed or implied, of the party who has a right to control one or both, that one should be a substitute for the other * * *." (Emphasis ours.)
We find nothing in the will involved here which indicates either expressly or impliedly that the father intended that the provisions of his will were to be in lieu of or in satisfaction of any claims which the sons might have against his estate for the trust funds which he allegedly commingled. Had he so intended, a few simple words would have made his intention apparent and decisive.
The widow argues that the testator by leaving her specific bequests and by directing that her bequests be free of inheritance taxes evidenced an intent that the claims of the sons, if any, would not affect her bequests. But this intent does not affect the question involved here which is whether the father by making his sons residuary legatees intended that such legacies were to be in satisfaction of any claims they might have against his estate.
We must, since we find no express or implied intent in the will, look to the general rule of law applicable here which is that a legacy to a creditor of the testator, which legacy is equal to or greater in amount than the indebtedness due the creditor will be presumed to have been intended as a satisfaction of the debt. 57 Am.Jur., Wills, Sec. 1574. Atkinson on Wills, Sec. 138 (2nd ed. 1953). Also see cases cited in 1932, 86 A.L.R. 6. Where this rule is held to apply the legatee-creditor is required to make an election between prosecuting his claim against the estate or taking under the will.
Although the above-mentioned rule is well established and is of considerable age, the presumption which it invokes is regarded by most courts with considerable disfavor. Because of its disfavor the courts have utilized very slight circumstances to take a case from under its operation.
In Atkinson on Wills, supra, pages 769-770, the author has this to say regarding this rule:
"This rule has been criticized, and it is subject to a number of qualifications *467 or exceptions. For example, it has been held that there is no such presumption when the testamentary provision is given for another express purpose, or is contingent, or is of specific chattels, or realty, or if there is a general direction for the payment of debts, or where the indebtedness is unliquidated, or incurred after the execution of the will, or is smaller than the debt * * *. In all these ways the courts have undermined the general doctrine; and it has even been stated that the modern rule is that it should appear from the will that the legacy was intended as satisfaction of the debt and that no presumption to that effect should be indulged. Of course, if the legacy is not deemed in satisfaction of the debt, the creditor-legatee may insist upon both and is not required to elect." (Emphasis supplied.)
In 57 Am.Jur., Wills, Sec. 1575, at page 1077, exceptions to the rule are set forth to include situations where:
(1) the legacy and debt are of different nature;
(2) the will contains an express direction for the payment of the testator's "debts", or his "debts and legacies";
(3) the debt is unliquidated;
(4) the debt is owed by the testator in a trust or representative capacity.
Considering the cases cited in 1932, 86 A.L.R. 6 and a more recent annotation on the same subject in 1955, 47 A.L.R.2d 1140 it appears that the rule, although not repudiated, is given so little effect in practice that reliance cannot safely be placed thereon.
The modern rule appears to us to be more just and reasonable. It is that no presumption is indulged that a legacy is in satisfaction of an indebtedness due the legatee and that it must appear from the will that it was the intention of the testator that it should so operate. Under this modern rule the many exceptions which the courts have made to the general rule are not necessary.
The general rule was based on the presumption that a man intended to be just, i.e., to pay his debt to the legatee, before being generous in giving a gift to the creditor and allowing him to collect his debt also.
The modern rule is based on the common sense approach that a testator best knows his intention and if he intends satisfaction of a debt by a legacy, he should and can easily so state such to be the case. Young v. McKinnie, 1854, 5 Fla. 542, a case involving election, although not specifically in point, is indication of a preference for the modern rule that the intention of the testator must be found in the will itself. This Court said in effect that the intention of a testator to dispose of property not his own, thereby imposing upon the legatee the obligation to elect, must be expressed or clearly implied in the will itself.
While we do by this Opinion adopt the modern rule as above stated, the sons should not be required to elect even under several of the well established exceptions to the older general rule first mentioned.
There is no such similarity between the stocks and securities of Puerto Rican companies and real estate in Puerto Rico as willed to the sons and the debt claimed, which was in money, as would operate to raise a presumption that the testator intended such legacy to be in satisfaction of the claim. This case then falls within the exception that where the legacy and the debt are of different nature the presumption does not arise.
The will of the testator contains the specific direction for the payment of his debts and this case can therefore be considered as coming within that exception. No one knew better than the testator whether he was indebted to his sons and had he not *468 intended any debt to them to be paid he could easily have exempted such debt in his direction that all debts be paid.
The claims of the sons are unliquidated. The amount which the father received from dividends and rentals as reduced by the amounts which he expended for the benefit of the sons can only be determined after an accounting. It may well be as contended by the executor in his answer that the father utilized all, or a major portion, of the dividends from the stock of the sons to reduce an indebtedness owed by the sons thereon, and that he gave the rental income in question, or a major portion thereof, to the mother of the sons to be used for the care, benefit and support of said minors. The reason for this situation being made an exception to the general rule becomes obvious in this case.
The general rule only operates where the legacy is as great or greater than the debt owed by the testator to the legatee. The sons admit that they do not know how much they are owed by the estate. The exact amount cannot be ascertained until the accounting is had. Nor does it appear in the record before us that the value of the legacy to the sons has been determined. In view of this it cannot be said that the legacy equals or exceeds the debt. It would be most inequitable to require the sons to take the gamble of buying the pig-in-a-poke represented by their unliquidated claims in lieu of their inheritance under the will. An election should only be required to be made, under any circumstances, where the elector has the opportunity of full knowledge of the things between which he must choose. In this instance the sons will not know the value of their claim until the accounting prayed for is had. There is little question that this case falls within that exception to the general rule which prevails when the claim of the legatee is unliquidated. Glover v. Patten, 1897, 165 U.S. 394, 17 S.Ct. 411, 41 L.Ed. 760; Van Riper v. Van Riper, 1838, 2 N.J. Eq. 1; and Buckner's Adm'r v. Martin, 1914, 158 Ky. 522, 165 S.W. 665, L.R.A. 1915B, 1156.
The last exception to be discussed is that one which applies where the debt is owed by the testator in a trust or representative capacity. It appears to us that this case is within this exception also.
There is no question from the record before us that the claims of the sons are based solely on the allegations that the father, while acting in a fiduciary relationship of natural and then as legal guardian, received funds belonging to the sons and converted them to his own use.
It is well established that where a debt is owed by the testator in a trust capacity, as in this case, a legacy to a creditor does not raise the presumption that the legacy is in satisfaction of the debt, and the creditor is not required to make an election between the devise and pursuit of his claim against the estate. Rucker v. Maddox, 1902, 114 Ga. 899, 41 S.E. 68; Walker v. Walker's Ex'r, 1869, 9 Wall. 743, 19 L.Ed. 814; Buckner's Adm'r v. Martin, 1914, 158 Ky. 522, 165 S.W. 665, L.R.A. 1915B, 1156; In re Chaconas' Estate, D.C. 1948, 80 F. Supp. 549; Orr v. St. Louis Union Trust Co., 1922, 291 Mo. 383, 236 S.W. 642; In re Klein, 1913, 80 Misc. 377, 142 N.Y.S. 557; Fetrow v. Krause, 1895, 61 Ill. App. 238; Van Riper v. Van Riper, 2 N.J. Eq. 1; Thompson v. Wilson, 1898, 82 Ill. App. 29. See cases cited in 86 A.L.R. 6 and 47 A.L.R.2d 1140.
This exception is in accord with the universal rule followed by this Court, that trust property does not, on the death of the trustee, become assets of his estate; that claims against the testator for trust assets are preferred claims and that trust property held by the trustee on his death cannot be charged with the debts of the decedent. Rackley v. Mathews, 1940, 141 Fla. 307, 193 So. 69; Pyle v. Pyle, Fla. 1951, 53 So.2d 312; Bourne v. State Bank of Orlando & Trust Co., 1932, 106 Fla. 46, 142 So. 810.
Nor can we see how the widow or the creditors of the estate of the father can *469 rightfully complain if the executor be required to do that which the father should have done, i.e. pay to the sons any sums received by him as their guardian. The widow and creditors are entitled to share only in the assets of the father, not in the proceeds of the dividends and rents belonging to the sons.
The widow contends that if the father was cognizant of any claim of the children in his assets he then must by his will have intended to convey property not wholly his own, but belonging in part to his children.
There is a principle of law that one who receives a benefit under a will by which the testator attempts to dispose of property which belongs to such beneficiary, or in which the latter has some right, claim or interest, must elect between his right to accept the benefits of the will and his right to assert his independent paramount title. 57 Am.Jur., Wills, Sec. 1555. Redfearn on Wills and Administration of Estates in Florida, Sec. 154, 2nd ed. 1946.
The chancellor apparently agreed with this contention of the widow for in his order requiring an election he said:
"Plaintiff's claim against the estate is not as a general creditor, but is a claim that the property of the estate is their property."
We do not construe the claims of the sons to be that the property of the estate is theirs. Their claim is not that specific property of the estate is theirs, but only that the estate of the father be required to account to them for the sums wrongfully converted by the father and that the assets of his estate be first utilized to satisfying these sums due them.
Had the father attempted to will to the widow the stock in the Puerto Rican corporation and the real property in Dade County which is owned by the sons and, as he did, named the sons as residuary legatees in the will, then the sons might be put to an election of taking under the will and allowing the widow to have their stock and real estate or refusing to take under the will and asserting their ownership of the stock and real estate.
In any event, however, since the intention of the testator to dispose of property not his own is not expressed or clearly implied in the will, the sons should not be required to elect on the basis of the decision of this Court in Young v. McKinnie, supra.
The widow urges that this case is controlled by the case of Hyatt v. Vanneck, 1896, 82 Md. 465, 33 A. 972. In that case a father with his daughter's consent sold certain lands in which he had a life estate and his daughter had a remainder interest. Of the $25,000 received from the sale, he used approximately $6,000 for satisfying debts and making repairs on property solely his and invested approximately $18,000 in five ground rents and bonds, taking such in his name. The father remarried and made a new will in which he specifically devised the five ground rents above-mentioned to the daughter, made specific bequests to the widow and daughter, and left the residue to his widow and daughter in equal shares. On the father's death the daughter sued the estate for $19,000, the amount remaining unaccounted for from the proceeds of the lands in which she had had a remainder interest. The court found that the will of the father specifically devised to the daughter the five ground rents and one half of the residue of the estate in both of which the father knew she had an interest, and that this was evidence of intent of the father that the daughter should take nothing more from his estate than provided for her in the will. The daughter was required to elect between prosecuting her claim or taking under the will.
The Hyatt case is easily distinguishable from the case at bar. There is nothing in the will in the case before us to indicate that the father attempted or intended to *470 dispose of by his will specific assets held by him as guardian of the sons, or that he intended to convey to the sons property in which they already owned an interest, so as to require them to elect either to rely on their own claim of ownership or take under the will. Both of these factors were present in the Hyatt case.
The widow argues that this is not a case where the testator owes an existing debt to a legatee, but rather involves the question of an election between accepting a bequest and pursuing an adverse claim. We have not overlooked this argument, but we are of the opinion that the claim of the sons is for an indebtedness and not an adverse claim of title to specific property devised in the will.
The sons advance other arguments upon which they rely in seeking issuance of the writ, but we do not feel it necessary to discuss them in view of our decision.
We have decided in this opinion that this case involves the doctrine of election as applied to the situation in which a testator leaves a legacy to a creditor, and that the so-called "modern rule" on the doctrine of election, as it is involved here, is more reasonable and just than the general rule. We will follow it in this Court.
We have decided that in the case before us that there appears no intent in the will of the father that the legacy to his sons was given in satisfaction of their claims so as to require an election by them.
Furthermore, in order to answer the widow's contentions we have also considered this case under the application of the general rule whereunder a presumption arises that a legacy to a creditor is in satisfaction of a debt if the legacy is as great or greater than the debt.
We have concluded that this case is removed from application of the general rule under the exceptions thereto as above stated.
The petition for certiorari is granted. The order requiring election is quashed and the cause is remanded for further proceedings consistent herewith.
TERRELL, C.J., and THOMAS, HOBSON, ROBERTS, DREW and THORNAL, JJ., concur.