**In the Matter of the ESTATE OF Marjorie A. VERTIN, Deceased.**

**ALUMNI ASSOCIATION OF the NORTH DAKOTA STATE SCHOOL OF SCIENCE, RESIDUARY DEVISEE, Petitioner and Appellee,**

v.

**Rev. Alban SAUER, Personal Representative of the Estate of Marjorie A. Vertin, Respondent,**

and

**Molly Pasich, Claimant Against the Estate of Marjorie A. Vertin, Claimant and Appellant.**

**Civ. No. 10562.**

Supreme Court of North Dakota.

July 27, 1984.

Johnson, Johnson, Stokes, Sandberg & Kragness, Wahpeton, for petitioner and appellee; argued by Simone M. Sandberg, Wahpeton.

Smith & Strege, Wahpeton, and Michael Welsh, Wahpeton, for respondent personal representative; argued by R.E.T. Smith, Wahpeton.

Rufer, Hefte, Pemberton, Schulze, Sorlie, Sefkow & Kershner, Fergus Falls, Minn., for claimant and appellant; argued by Oscar J. Sorlie, Jr., Fergus Falls, Minn.

PEDERSON, Justice.

Molly Pasich appeals from an order of the County Court of Richland County denying her claim against the estate of her niece, Marjorie A. Vertin. We reverse and remand.

Marjorie A. Vertin ("Madge") died on December 26, 1982. Following a stroke in 1973, Madge was in constant need of nursing care and household assistance. During various periods from 1973 to 1982, Molly Pasich provided such care and assistance. In addition, Madge hired housekeepers to do cleaning and cooking, as well as attend to her personal needs. Madge assured Molly on several occasions that she would be paid for her services and that she would be "taken care of." Following Madge's death, Molly filed a claim with the personal representative of Madge's estate, Reverend Alban Sauer, seeking compensation in the amount of $50,000 plus all personal property in the estate in payment for her services. She subsequently filed an amended claim for services, seeking $267,248. A codicil to Madge's will included a bequest of $10,000 to Molly.

The personal representative and Molly entered into a stipulation, whereby Molly would receive $50,000 and certain enumerated personal property of the estate in addition to the $10,000 bequest, and the estate would be released from all claims which Molly had against the estate. The stipulation was, by its terms, subject to approval by the court. The principal beneficiary under Madge's will, the Alumni Association of the North Dakota State School of Science, filed a petition for a restraining order, seeking to restrain the personal representative from paying Molly's claims. The temporary restraining order was granted, and a hearing on the matter was set.

The trial court, in denying Molly's claim, made an express finding that a contract did exist between Madge and Molly for payment for personal services rendered,[1] but

1. The Alumni Association contends that the evidence does not support the court's finding that a

concluded that the obligation had been fully discharged by the $10,000 bequest:

"It is clear to the Court, then, that Madge Vertin felt that she had adequately discharged her obligation to Molly Pasish [*sic*] by the terms of her second codicil."

The court made no finding regarding whether or not $10,000 was a reasonable amount of compensation for the services performed by Molly.

 Where there is a claim for compensation for personal services and a bequest in the will to the claimant, it will not be presumed that the bequest is in satisfaction of the claim unless it appears from the will that it was the intention of the testator that the bequest have that effect. *Lopez v. Lopez*, 96 So.2d 463, 467 (Fla.1957); *In re Estate of Snell*, 40 A.D.2d 33, 336 N.Y.S.2d 967, 968 (1972); *In re Miller's Estate*, 12 Misc.2d 443, 172 N.Y.S.2d 860, 864 (Sur.Ct. 1958); *Slover v. Harris*, 77 Wyo. 295, 314 P.2d 953, 964 (1957); *see also* 80 Am.Jur.2d *Wills* § 1590 (1975); Annot., 47 A.L.R.2d 1140, 1154 (1956). The bequest to Molly did not include any language indicating that it was intended to discharge the existing obligation:

"In addition to my said will and codicil I make the following provisions:

"FIRST: I give and devise the sum of Ten Thousand Dollars ($10,000.00) to Molly Pasich."

Because there is no direct evidence in the will or in the testimony indicating Madge's intent, we conclude that the court's finding that Madge intended to discharge the obligation to Molly by her bequest was clearly erroneous because it was based upon the erroneous view that there is a presumption that a bequest to a creditor of the decedent acts to satisfy the obligation.

We believe that the codicil to Madge's will demonstrates that Madge did not intend the $10,000 bequest to discharge the

obligation to Molly for personal services. In addition to the $10,000 bequest to Molly, the codicil provided a bequest of $10,000 to Cecilia Halmrast. These bequests were made in identical language. Cecilia Halmrast was at that time employed by Madge as a housekeeper/caretaker, and had known Madge for only four months. During this four-month period, she had been paid over $6,500 for her services. It is not logical to infer that Madge intended to make a gratuitous $10,000 bequest to a housekeeper she had known for merely four months, and who had already been paid for her services, but would intend that an identical $10,000 bequest to her aunt serve as payment for ten years of loyal and dedicated personal service. The two bequests indicate that Madge intended each as gratuitous bequests, and not as payment for personal services. Accordingly, we conclude that the court erred in denying Molly's claim.

Ordinarily we would remand this case to the county court for additional findings on the reasonable value of the services performed by Molly. In this instance, however, Molly and the personal representative have entered into a stipulation in an effort to settle the claim.

Section 30.1–19–13, NDCC [U.P.C. § 3–813], authorizes the personal representative to compromise and settle claims:

"*30.1–19–13 (3–813). Compromise of claims.*—When a claim against the estate has been presented in any manner, the personal representative may, if it appears for the best interest of the estate, compromise the claim, whether due or not due, absolute or contingent, liquidated or unliquidated."

The personal representative in this case has compromised a claim of $267,248 for $50,000 in cash plus certain enumerated personal property, consisting primarily of furs, jewelry, silver, and furniture. There

---

contract existed between Madge and Molly for payment for personal services. We recently discussed the applicable law in *Matter of Estate of Raketti*, 340 N.W.2d 894, 901–902 (N.D.1983). We have thoroughly reviewed the record in this

regard and conclude that there was ample evidence to support the trial court's finding that a contract for payment for services existed between Madge and Molly.

has been no claim of bad faith or collusion in reaching the settlement, and Molly's claim was not fraudulent or frivolous. The trial court previously refused to approve the stipulation because of its conclusion that the obligation had been discharged by the bequest to Molly. Having reversed that finding of the county court, we conclude that there is no longer any basis for withholding approval of the stipulation. We therefore remand to the trial court with directions that an order be entered approving the stipulation dated April 4, 1983, entered into between Molly and the personal representative.

ERICKSTAD, C.J., and VANDE WALLE, SAND and GIERKE, JJ., concur.