(Decided January 9th, 1896.)

---

# CHARLOTTE HYATT *vs.* AMY H. VANNECK.

*Devise and Legacy—Election by Devisee—Obligation of Beneficiary Under a Will.*

A party cannot claim a benefit under a will and at the same time defeat its provisions, and hence, where a testator gives to one devisee property in which another has an interest, the latter cannot take what is devised to him and at the same time what is devised to the former, although but for the will it would be his.

A testator gave to his daughter property which he knew to be hers with a limitation over in favor of others, and in the residuary clause he mixed her property with his own and gave to her one-half. *Held*, that the devisee was put to an election to determine whether she would claim her own property or would take the devises and bequests in the will.

A. was life-tenant of certain real estate, the remainder in fee being in his daughter. She united with him in a conveyance of the property

for $25,000. The proceeds were received by A. with his daughter's consent. He invested $6,000 thereof in a house and the balance in ground rents and bonds, all in his own name. He subsequently married and conveyed the said house to his wife. By his will he devised the ground rents to his daughter with a limitation over in the event of her death without issue, and the balance of his estate was divided by the residuary clause between his wife and daughter. The latter obtained a decree against the former for $6,000, which was paid. The daughter then filed a bill claiming that she was entitled to receive from the testator's estate the whole amount for which the property in which she had the remainder was sold, less $6,000 already paid. *Held*, that there being no fraud or concealment on the part of the testator in dealing with the money received from said sale, and his intention being manifest that his daughter should have from his estate only the provision made for her by the will, she was bound to elect to claim either the ground rents and bonds or to take the devises and legacies given her by the will.

Appeal from a decree of Circuit Court No. 2, of Baltimore City (WICKES, J.), by which it was adjudged that the executors of the estate of Edward Hyatt should pay to the appellee the sum claimed by her to be due from said estate. The facts appear in the opinion of the Court.

The following devises and bequests were made by the will of Hyatt: (1.) An annuity of $250 to a certain Annie Kelly for her life, with remainder equally to Amy H. Vanneck and Charlotte Hyatt. (2.) Five ground rents to Amy H. Vanneck, with a proviso that if he should die leaving no issue or descendant surviving her, then the ground rents should go to other parties, as declared in the second clause of the will. (3.) Certain articles to Amy H. Vanneck, contained in his dwelling No. 16 W. Franklin street. (4.) All the other household and kitchen furniture to Charlotte Hyatt. (5.) Sixty-seven shares of stock of the Sherwood Distilling Company to John H. Wight, in trust, as to 50 shares thereof, for the use and benefit of Charlotte Hyatt, and as to the remaining 17 shares thereof, for the use and benefit of Amy H. Vanneck; none of the stock during the period of 10 years from the date of his death to be sold except by the joint assent and transfer of John H. Wight, trustee, and Charlotte Hyatt or Amy H. Vanneck, respec-

tively, as the case might be.   In his will he states that his reason for giving Charlotte Hyatt 50 shares and Amy H. Vanneck only 17, was that he had already given Amy 33 shares, and he desired to equalize their holdings.   (6.) All the money due him by the Sherwood Distilling Company to his wife, Charlotte Hyatt, and his daughter, Amy H. Vanneck, to be divided equally between them; the said money, however, to be allowed to remain in the hands of the company at interest, and not to be withdrawn from it without its consent, for the period of 10 years after his death.   (7.) All the rest and residue of his property to his wife Charlotte and his daughter Amy, equally to be divided between them.

The cause was argued before BRYAN, McSHERRY, FOW-LER, BRISCOE and ROBERTS, JJ.

*Charles W. Field* (with whom was *William A. Fisher* on the brief), for the appellant.

Mrs. Vanneck under the well-known and long-established law of "election," must choose between two courses, viz.: Either yield to the will absolutely and take what her father gives her of his property, ratifying his disposition of what was rightfully hers ; or else claim what belonged to her in spite of his will, and surrender an equal value of his property bequeathed to her, for the compensation of those legatees or devisees to whom her property had been given by her father's will.   She cannot claim under the will, and at the same time defeat its provisions as to others; she must adopt it *in toto*, or else renounce her rights under it.   If she desires to accept what her father gave her by his will, she must release all claim to any property of hers that he has given thereby to any other person, wholly or partially, and all claims against his estate that would defeat or impair the testamentary intention evidenced by that will.   Without quoting the language of the cases, we cite, in support of this doctrine: *Waters* v. *Howard*, 1 Md. Chancery, 112 ;

*McElfresh* v. *Schley*, 2 Gill, 202 ; *Whitridge* v. *Parkhurst*, 20
Md. 87 ; *Barbour* v. *Mitchell*, 40 Md. 159 ; 2 *Williams on
Exors.* (last ed.) 767–8.

But the appellee argues that she is not claiming these
ground rents and bonds *against* her father's will, but allows
the disposition of them to stand as the will prescribes ; and
is claiming the money that bought them, that Mr. Hyatt
paid for them, as a common debt due by him to her. Does
this any the less defeat her father's intention ?    Does this
any the less break up and impair the scheme of equality
between his wife and daughter, which is the corner-stone of
the will from top to bottom ?

The general intent of the will, which is the one to be
gratified, is that, so far as the testator could control the dis-
position, his wife and his daughter should be equal in worldly
goods.    The appellee is seeking to defeat this intention, and
to obtain the interests devised and bequeathed to her in the
ground rents and bonds, as well as all other benefits derived
under her father's will, and, at the same time, to make the
estate pay to her the whole purchase price of these securities.
We submit this position is untenable in a Court of Chancery.
Edward Hyatt was not a trustee for his daughter ; he was
a life-tenant in possession, and she the remainderman.    And
if he had been a trustee he has committed no act—no fraud-
ulent, or· immoral or unlawful act—which the law would
condemn, or for which it would punish him pecuniarily as a
man guilty of a violation of his trust relation.  ˙To say that
his depositing the $25,000 in bank to his credit was an un-
lawful act or breach of trust, is absurd.    To say that his
investing $5,000 in coupon bonds, passing by delivery, was
unlawful or a breach of duty is absurd.    And to hold that
the mere failure to insert Mrs. Vanneck's name in the deeds
for the ground rents along with his own was fraudulent or
a· breach of trust is equally without foundation or reason,
when we remember that she was his only child, to whom
he bequeathed soon afterward half his large estate, worth
ten times the value of the rents.    How is it possible to im-

pute moral wrong or evil intent in such a case? And it is as a punishment for such misconduct alone that equity ever submits—even a technical trustee—to the burden of the kind of " election " which the appellee invokes for her relief here. That is, the election or option on the part of a *cestui que trust* when his trustee has spent, squandered or invested trust funds in violation of law or his duty, to take the investment, if worth more than the money put into it, or to decline the investment, throw it on the trustee's hands, and hold him personally responsible for the money if the investment depreciates in value. Equity never puts a man in this " heads I win tails you lose " position except as a reward for malfeasance. The discussion or argument of the appellee on the law of ademption or satisfaction of *debts by legacies* has no relevancy to this case. Mrs. Vanneck is not and never was a *creditor* of her father's, and hence we do not claim that any legacy under his will adeems any debt due her. There is none to adeem; although if there were, our learned opponent's theory that *Edelen* v. *Dent, Owings* v. *Owings*, and such cases, would deny the ademption or satisfaction of an ordinary debt by such legacies as Mrs. Vanneck received, might possibly be correct. Just now he is firing in the air.

. *John Prentiss Poe* and *Edgar Allan Poe*, for the appellee.

The rule that a legacy from a debtor to a creditor is presumed to be in payment of the debt is looked upon with disfavor by the Courts, and advantage is taken of slight circumstances to overthrow it. *Edelen* v. *Dent,* 2 G. & J. 191 ; *Story on Eq. Jur.* sec. 1122. So it has been decided that no presumption of payment arises when a particular motive is assigned for the gift, or where the legacy is of the same amount as that given to other legatees (*Story Eq. Jur.*, sec. 1122 ; 23 *Gratt.* 93), or the legacy is of less amount than the debt (1 *Harris & Gill*, 491 ; 12 *Mass.* 391), or is contingent or uncertain (2 *Gill & Johnson*, 191 and 192 ; 1 *Green Chan.*, 1), or of a different nature, either as to subject-

matter or interest (1 *Harris & Gill*, 491 ; 2 *H. & J.* 63 ; 62 *Pa. St.* 192 ; 12 *Mass.* 391–394 ; *Story, Eq. Jur.*, sec. 1122 ; 53 *N. Y.* ; 1 *Green's Chan.* 1), or where there is a difference in the time of payment of the debt and the legacy (2 *G. & J.* 192), or where the bequest is of the whole or part of the residue (2 *G. &. J.* 192.) So, also, if the ground of the indebtedness is a breach of trust to which the testator was a party, no presumption of satisfaction arises from the fact that he has bequeathed a legacy to the *cestui que trust*. (*Smith* v. *Lyne*, 2 Y. & C. C. 345 and 350.)

Applying the rules of law just enumerated, none of the provisions of the will in question operate as a payment of the debt. The first provision does not so operate because the legacy is of less amount than the debt ; there is a difference as to the time of payment, and the legacy is of the same amount as that given to another legatee. The second provision does not so operate, because the legacy and debt are of a different nature, both as to subject-matter and interest. The third provision does not so operate, because the legacy and debt are of a different nature as to subject-matter. The fifth provision does not so operate, because the legacy and debt are a different nature as to interest ; the legacy is of less amount than the debt and a particular motive for the gift is assigned. The sixth provision does not so operate, because the debt and legacy are of a different nature as to interest; the legacy is of the same amount as that given to another legatee ; there is a difference as to the time of payment of the debt and legacy, and the legacy is contingent and uncertain. The seventh provision does not so operate because the bequest is of a part of the residue, is contingent and uncertain, and the legacy is of the same amount as that given to another legatee. In addition to all this, as the debt was created by a breach of trust on the part of the testator, the rule of law as to the satisfaction of a debt by a legacy does not apply at all.

Mrs. Hyatt took ground in her answer, first: That the devises and bequests in the will were *a satisfaction in law*

of Mrs. Vanneck's claim, and next, that if not such satis-
faction, she could not claim the ground rents and the coupon
bonds, in the purchase of which Mr. Hyatt expended nearly
the whole of this nineteen thousand dollars without aban-
doning her right to take the devises and bequests made in
her favor in the will.   In reply to this defence, Mrs. Van-
neck does not claim the ground rents as hers, nor the
coupon bonds as hers, by reason of their being held to be
the representatives of the money with which they were pur-
chased, nor did she deny her father's right to deal with the
ground rents specifically as his, nor with the coupon bonds
as a part of the residue of his estate, but conceding that
the ground rents belonged to him, and that the coupon
bonds also belonged to him, she acquiesced in the disposal
made by him of the ground rents, and assumed that the
bonds being his property, passed under the residuary clause
of his will.   She insists, however, that no one of the devises
and bequests in the will, nor all of them combined operated
as a satisfaction of her claim for the nineteen thousand dol-
lars, and that having recognized her father's right to treat
the ground rents and coupon bonds as absolutely his and to
deal with them accordingly, no case was presented either for
the doctrine of election, or for the doctrine of satisfaction.

   In this case, the appellee has elected to hold the estate
of her father liable for his breach of trust instead of attempt-
ing to follow the trust fund; and to be successful, in accord-
ance with the law, as just stated, it is only necessary for her
to show that a breach of trust has been actually committed.
The admitted facts certainly conclusively prove such breach
of trust.   Edward Hyatt, the life-tenant, immediately on the
receipt of the $25,000, on November 28, 1892, deposited
the whole amount in the National Mechanics' Bank in his
own name individually.   On December 8th he bought five
one thousand dollar coupon bonds, which, as part of his
personal estate at the time of his death, he bequeathed as
his own property to his daughter and wife equally.   On
January 4, 1893, he invested $12,656.80 of the trust fund

in five ground rents on Madison avenue and took the deeds
in his own name, and these same ground rents he subse-
quently treated as his own, by bequeathing them specifically
under his will.   On December 20, 1892, he spent $4,000
of the trust fund in purchasing the  ground rent on the
property No.  16 West Franklin street, the leasehold interest
in which he himself held, and took the  deed in his own·
name; and after spending $2,000 more of the trust fund on
January 25, 1893, in fixing up and improving 16 West
Franklin street, he conveyed the whole property, as if it
were his own absolutely, to his second wife, Charlotte
Hyatt, the appellant in this case.   How could a breach of
trust be more clearly shown?

BRYAN, J., delivered the opinion of the Court.

This is an appeal from the decree of a  Court of Equity.
The cause was heard in the Court below on bill and answer,
and of course the statements in the answer are admitted to
be true.   The facts are as follows :  Edward Hyatt was
seized and possessed for life of a house and lot on Cathe-
dral street in the  city of Baltimore, with remainder in fee
to his daughter and only child, Amy H. Vanneck, the wife
of John T. Vanneck.   The property was sold for twenty-
five thousand dollars ;  the deed was  executed by Hyatt
and his daughter and her husband ; and the money was
paid into the hands of Hyatt by the attorney of the pur-
chaser.   The money was deposited in bank by Hyatt and
in a very short time afterwards he invested of this amount
seventeen thousand eight hundred and four dollars and
ninety-two cents in five ground rents in the city of Balti-
more, and in five coupon bonds of the Toledo Electric
Street Railway Company.   He also expended four thousand
dollars in paying off a ground rent on a leasehold lot of
ground on Franklin street in the city of Baltimore, which
belonged to him, and two thousand dollars in making re-
pairs and improvements on a dwelling house situated on the
same lot.   He paid six hundred and twenty-five dollars to a
broker for negotiating the sale of the Cathedral street house

and lot and fifty-nine dollars and seventeen cents for the ex-
amination of the titles to the ground rents and for recording
the deeds which conveyed them.  The money from the sale
of the house and lot was received by Hyatt on the twenty-
eighth of November, eighteen hundred and ninety-two, and
all these expenditures were made before the end of January,
eighteen hundred and ninety-three.  In fact, with the excep-
tion of about two thousand dollars, all of them were made
before the fifth of January.   In May, eighteen hundred and
ninety-three, Hyatt intermarried with Charlotte, one of the
defendants below.   In November of the same year by suit-
able deeds  he caused to be conveyed to her the  fee-simple
in the house and.lot on which the six thousand dollars had
been expended.   He died in November, eighteen hundred
and ninety-four, having in the previous December duly made
his last will and testament.  By it he devised to his daughter,
Amy  Vanneck,  the  five  ground  rents  above  mentioned,
with certain limitations over in case she should die without
leaving issue or descendants surviving her.   He also gave
to a trustee, for the use of his wife, fifty shares of the Sher-
wood Distilling Company, and seventeen shares of the same
stock for the use of his daughter, stating that he had
already given her thirty-three shares of the stock and he
wished to equalize their holdings.   He also gave to his wife
and daughter in equal shares the money due to him by the
Sherwood Distilling Company.  He gave his wife and daugh-
ter other legacies of small value, and he then gave all the rest
and residue of his property of every kind and description to
them equally to be divided between them.   After his death
Mrs. Vanneck obtained a decree in equity against Mrs. Hyatt,
ordering the sale of the Franklin street house and lot for the
payment of the six thousand dollars, parcel of the twenty-five
thousand dollars, which had been invested in it.   This sum
was  paid  to  her  by  Mrs.  Hyatt.   Mrs.  Vanneck  filed  this
bill  of  complaint  against  Mrs.  Hyatt  and  the  executors  of
the  will  of  Edward  Hyatt;  she  contended  that  it  was  the
bounden  duty  of  her  father  to  invest  the  twenty-five  thou-

sand dollars received from the sale of the Cathedral street house for himself for life, with remainder to her absolutely; ·and that because of his failure to do so before his death, she became his creditor for that amount, and that she is entitled to recover from his executors the balance of this sum remaining unpaid with interest from the date of his death after deducting six thousand dollars paid by Mrs. Hyatt. In the argument at the bar, her counsel earnestly insisted that his disposition of the money was a breach of trust on his part.

By virtue of the provisions of Article 16, section 198, of the Code, either Hyatt the life-tenant, or Mrs. Vanneck the party in remainder, could have obtained from a Court of Equity a decree for the sale of the Cathedral street property, and an investment of the proceeds of sale under the sanction of the Court, for the benefit of the owners according to their several interests. This course was not adopted; on the contrary they joined in a deed conveying the property to a purchaser. The purchase money was paid to Hyatt. The deed is not exhibited in the record, but it is beyond question that the receipt of the purchase money by Hyatt was by the knowledge, consent and acquiescence of his daughter. The attorney for the purchaser was an able and experienced lawyer, and no one could suppose that he would have permitted his client to pay twenty-five thousand dollars to a person not authorized to receive it and to give a legal acquittance for the payment. It is not, however, alleged in the bill that Mrs. Vanneck did not consent that Hyatt should receive the money nor is it alleged that she did not know in what manner he invested it. It is alleged that it was his duty to invest it for the benefit of himself for life, with remainder to his daughter. It might be assumed that no man of ordinary intelligence would keep the money lying uninvested and unproductive. He did invest it. As a matter of course the investment was the property of those who owned the fund according to the due proportions of their interests. This

ownership was not defeated nor impaired by the circumstance that her name did not appear in the deeds and coupon bonds which represented the investment. It is alleged that Hyatt became a debtor to his daughter in consequence of this transaction. BLACKSTONE says that " the legal acceptation of *debt* is a sum of money due by certain and express agreement." 3 *Blackstone Commentaries*, 154. Such an agreement does not appear on this record. But, however, if Hyatt was guilty of tortious conduct injuriously affecting the rights of his daughter, she would necessarily be entitled to redress in some form of proceeding against his executors. We will, therefore, consider this aspect of the case. It is not alleged that he made the investment in a negligent or injudicious manner. A portion of the fund was invested in ground rents in the city of Baltimore. These, when well secured, are considered the safest and most desirable means of producing income. We have no knowledge of the value of the coupon bonds. But it is not alleged that either they or the ground rents were not worth the amounts of money paid for them. Neither is it alleged that Hyatt concealed or fraudulently sought to conceal from his daughter the particulars of the investments ; nor even that they were made without her knowledge and acquiescence. Beyond question, she now has full and perfect knowledge on the subject, and if she wishes to do so she has it in her power to claim them, and likewise the portion of the money which remains uninvested. It would be unjust to allow her to claim anything more on this account ; unless she could show that in taking these investments she would sustain loss through some fraud, negligence or mismanagement on the part of her father. If they are equal in value to the price paid for them she cannot sustain the smallest loss or injury. The right to invest the money is admitted in the bill of complaint; but the mode of the investment is impeached for the reason, to-wit, that Mrs. Vanneck's name was not used in making it. In onr opinion there is not the slightest circumstance to show any

fraud, evil practice, negligence or want of judgment on the part of Hyatt in this transaction; and we do not think that for any other reason shown in this case his daughter has any right of reclamation against his executors. Before we leave this subject, as a matter of justice to Mr. Hyatt, we must recall the fact that Mrs. Vanneck was his only child, and at the time of the occurrences above mentioned, he was a widower; it is very reasonable, therefore, to suppose that he contemplated the probability that she would at his death come into the possession of much the greater part of his property, and that he considered it a matter of the smallest consequence whether her name appeared in the investments or not. If it should become desirable to change them, it would be a great deal more easy to do so if they were solely in his name; inasmuch as his daughter and her husband lived in Canada, and it would involve some inconvenience and delay to obtain the deeds and assignments necessary for making the change. It is more just to adopt this hypothesis than the contrary one that he intended to defraud his only child, for whom he made a liberal provision by his last will and testament being more than one-half of his entire property.

The testator gave to his daughter property which he knew to be hers with a limitation over in favor of other persons. In the residuary clause of his will he mingled property which he knew to be hers with other property not specifically disposed of and gave it in equal shares to his widow and daughter. He also gave his daughter the stock of the Sherwood Distilling Company and the debt due by it. Its value is not shown in the record, but it is evident from the language used that the testator placed a high estimate on it. So far as his intention is concerned nothing can be clearer than this; that he intended Mrs. Vanneck should have the provision made for her in his will and nothing more from his estate. It is not possible that he should have intended that, in addition to this provision, she should have the money derived from the sale of the Cathedral street property. In *McElfresh* v.

*Schley*, 2 Gill, 181, the law is declared as follows: "From the earliest case on the subject, the rule is, that a man shall not take a benefit under a will, and at the same time defeat the provisions of the instrument. If he claims an interest under an instrument, he must give full effect to it, as far as he is able to do so. He cannot take what is devised to him, and, at the same time, what is devised to another, although, but for the will, it would be his; hence he is driven to his election to say which he will take." And the same doctrine has been repeatedly stated in subsequent cases. The principle of election very appropriately applies to the claim made by the complainant. . The Court below passed a decree to the effect that the executors of Hyatt should pay her twenty-five thousand dollars, less broker's commissions, amounting to six hundred and twenty-five dollars, with interest from the day of the death of the testator, after deducting the six thousand dollars paid to her by Mrs. Hyatt. We are obliged to reverse this decree. We hold that the complainant must elect whether she will take the ground rents and the five bonds of the Toledo Electric Street Railway Company, and the sum of five hundred and seventy dollars and eight cents with interest from the death of the testator, or, whether she will take the devises and legacies left to her by the will. The sum of money mentioned is the residue of the twenty-five thousand left after deducting the price of the investments, the six thousand dollars, the broker's commissions and the cost of examining titles and recording deeds. And we shall require the complainant to make her election before the first Monday of April next, and file with the clerk of this Court an instrument of writing signed by herself and her husband or by her counsel, showing that she renounces either her devises and legacies, or her claim to the money received from the sale of the Cathedral street property.

> *Decree reversed with costs above and below, and decree for election.*

(Decided January 31st, 1896.)