(Decided March 26th, 1896.)

---

FERDINAND C. LATROBE AND OTHERS *v.* MARY MERCER CARTER AND OTHERS.

*Title by Descent and by Purchase—Estoppel—Election.*

Where real estate is settled under a deed of trust by which the settlor declares that he holds the same as trustee for his children and grand-children in certain proportions, and reserves a life estate to himself, the remaindermen take by purchase and not by descent, when their estate acquired under the deed is different from that which they would have taken as heirs at law.

When under such deed a party takes an equitable estate upon the death of the life tenant, while if he took as heir he would take the legal estate in fee, his title is acquired by purchase.

If an estate is devised with any other limitations or in any other shape than the law of descent would direct, the devisee holds by purchase, and not by descent.

When real estate is acquired by a man as the heir of his mother, upon his death intestate and without issue, the same descends to his heirs on the maternal side.

When an interest in property is given to one by a deed of trust, he is not put to an election or estopped, because he takes under the deed, from claiming that he is entitled to another interest in the property as heir at law of a certain party.

Cross-appeals from a decree of the Circuit Court of Baltimore City declaratory of the title to the real estate of which T. Swann Latrobe died seized, intestate.   Said intestate died on May 13, 1894, leaving as his heirs at law *ex parte paterna* a brother and sisters of the half blood, and on the maternal side sisters of his mother and descendants of a deceased sister and brother.   Most of the estate of which said intestate was seized was derived under a deed of trust executed by his maternal grandfather, Thomas Swann, in 1878, by which he declared that he held, subject to a life estate in himself, all his property in trust—as one-fifth part thereof for his grandson, the said Thomas Swann Latrobe, the only child of his deceased daughter, Louisa Sherlock Latrobe. Thomas Swann died in 1883, leaving a will by which the provisions of the deed of trust were ratified.

At the time of the marriage of Thomas Swann in 1834, with Elizabeth Gilmor Sherlock, an antenuptial settlement was made by which there was conveyed to Robert Gilmor one-half of all the real and personal estate of the said Elizabeth G. Sherlock, in trust, from and after her death, should she die in the lifetime of the said Thomas Swann the elder (which event did occur, as aforesaid), for the use of such persons and in such shares and proportions as the said Elizabeth G. Sherlock, by her last will, or writing in the nature thereof, should appoint; and the said Elizabeth G. Swann, by will dated June 17th, 1849, after giving certain legacies, devised and bequeathed the rest and residue of her real and personal estate to her said husband, Thomas Swann the elder, one-half thereof for himself, and the remaining one-half thereof in trust for their five children, to-wit: (Thomas

Swann 2nd), Louisa (afterwards the said Louisa Latrobe), Jane Byrd (afterwards the said Jane Byrd Ferguson), Elizabeth (who is Elizabeth G. Whipple), and Mary (who is Mary M. Carter) ; Elizabeth G. Swann died in 1876.

In 1838, Thomas Swann the elder conveyed to said Thomas Swann the 2nd, to John Sherlock Swann and to the said Louisa Swann (the only children then living of the said Thomas Swann the elder and Elizabeth G. Swann), in fee, subject to the life estate of the said Elizabeth G. Swann, the mother of said grantees, a lot of ground in Baltimore City, then known as the Water Company's lot, situated at the southwest corner of Franklin and Cathedral streets ; said John Sherlock Swann died an infant intestate, in the year 1839—said brother Thomas and sister Louisa surviving him being his heirs at law ; that said Thomas Swann 2nd also died intestate, in the year 1866, leaving his said sons Thomas Swann 3rd and Sherlock Swann surviving him ; said Louisa intermarried with said Ferdinand C. Latrobe, in or about the year 1863, and died intestate in the year 1865, leaving their only child, the said T. Swann Latrobe, surviving her ; said Elizabeth G. Swann died in the year 1876, her life estate therein being thereby extinguished; the said lots and premises, No. 103 West Franklin street, and Nos. 410 and 412 Cathedral street, together form a portion of said Water Company's lot, conveyed by Thomas Swann the elder as aforesaid, and therefore the said T. Swann Latrobe became seized of the legal title to an undivided one-half interest in said lots and premises No. 103 West Franklin street, and Nos. 410 and 412 Cathedral street, by descent as heir at law of his said mother Louisa.

The Court below (WRIGHT, J.), decreed as follows :

1st. That Thomas Swann Latrobe acquired by purchase,. and not by descent, so much and such parts of the real estate situate in the State of Maryland, of which he died, seized and possessed, which he acquired from his maternal grandfather, Thomas Swann, under the declaration of trust

in these proceedings mentioned, executed by him on the 3rd day of April, 1878, Complainants' Exhibit No. 2 being a certified copy thereof, and that the said real estate descended equally to the brother and sisters of the half blood of the .said Thomas Swann Latrobe, to-wit : Ferdinand Claibourne Latrobe, Charlotte C. Latrobe and Ellen Virginia Latrobe, the infant defendants in this cause, free, clear and discharged of the trusts created and declared in and by said declaration of trust.

2nd. That Thomas Swann Latrobe acquired by purchase, and not by descent, so much and such parts of the real estate of which he died, seized and possessed, which he acquired from his maternal grandmother, Elizabeth Gilmor Swann, under and by virtue of her last will and testament in these proceedings mentioned, Complainants' Exhibit No. 16 being a certified copy thereof, and that said real estate descended equally to the brother and sisters of the half blood of the said Thomas Swann Latrobe, to-wit : Ferdinand Claibourne Latrobe, Charlotte Latrobe and Ellen Virginia Latrobe, the infant defendants in this cause, free, clear and discharged of any trusts created in and by said last will and testament.

3rd. That Thomas Swann Latrobe acquired by descent from his mother, Louisa Swann Latrobe, and not by purchase, an undivided one-half of the real estate in these proceedings mentioned, and known as the Water Company's lot, being lots and improvements numbers 410 and 412 Cathedral street and number 103 West Franklin street, in the city of Baltimore, and that the same descended equally to the plaintiffs, Mary Mercer Carter and Elizabeth G. Whipple.

4th. That as to so much and such parts of the real estate of which Tnomas Swann Latrobe died, seized and possessed, as is situate in the District of Columbia and in the State of Rhode Island, this Court being without jurisdiction to declare in whom the same vested upon the death of the said Thomas Swann Latrobe, the bill of complaint, in so far as

it relates to such property located without the State of Maryland be, and the same is hereby dismissed without prejudice to the rights of any of the parties to this cause.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE and BOYD, JJ.

*John E. Semmes* and *Frank Gosnell* (with whom was *T. M. Lanahan* on the brief), for F. C. Latrobe and others.

*Charles Marshall* and *William H. Brune* for Mary Mercer Carter and others.

FOWLER, J., delivered the opinion of the Court.

Thomas Swann Latrobe died intestate as to his real estate, and the bill in this case was filed for the purpose of having the Court below declare by its decree what portion of his said estate he acquired by purchase, and how much thereof he acquired by descent. The maternal aunts of the intestate claim the whole of his said estate upon the theory that all of it was held by him by title by descent, while the defendants, his half-brother and half-sisters, who are also claiming the whole, base their contention upon the ground that he held the same by purchase, and that, therefore, under the provisions of our Code (Art. 46, sections 19 and 20) it must come to them. By its decree the Court below held that both of these contentions were wrong, and decreed as follows: 1st. That all the property and estate which was acquired by the intestate under the declaration of trust executed by his grandfather, Thomas Swann, on 3rd April, 1878, said intestate held by purchase. 2nd. That so much of said intestate's estate as he acquired under the will of his grandmother, Elizabeth Gilmor Swann, he also held by purchase and not by descent; and lastly, that said intestate acquired by descent from his mother, Louisa Swann Latrobe, one undivided half of the real estate in these proceedings known as the "Water Company's Lot."

From this decree both the plaintiffs and defendants have appealed, and we will proceed at once to consider the nature of the intestate's title to the three classes of property which it describes, for these include all the property involved in this controversy as here presented.    The instrument, which is called in the decree the deed of trust, is dated the third of April, 1878.    By it the late Gov. Thomas Swann, the maternal grandfather of the intestate, divided all his estate, including that which he acquired under the will of his wife, among the children and grandchildren of his said wife and himself.    He thereby declared that he held his real and personal property, with certain exceptions therein set forth and not now necessary to mention, in trust for his said children and grandchildren, subject to a life estate in himself; one-fifth thereof to each of his three daughters and each of his two grandsons, one of the latter being the intestate, Thomas Swann Latrobe.    As to the one-fifth share of his daughter, Mrs. Carter, he provided that it should include certain farms in Virginia, at a valuation to be agreed upon as therein provided, so that her one-fifth shall be equalized in value with the other fifth parts.    And as to the fifth parts or shares of his grandsons he made this provision :  These being deducted from the one-fifth parts of my said estate hereby declared to be held in trust for my grandchildren, Thomas Swann Latrobe, Thomas Swann and Sherlock Swann, an amount equal in value to the property situated in the city of Baltimore, known as the " Water Company's Lot," which is to be added to and equally divided between the one-fifth parts held in trust by me for my daughters.    And by the will of the intestate's grandmother there was devised to his grandfather, Thomas Swann, in trust for his daughter, Louisa, the mother of the intestate, one-fifth of the half of the said grandmother's estate.    And it was further provided by said will that Gov. Swann should be indemnified by said Louisa and her brother, Thomas, to the extent of certain improvements he had placed on the " Water Company's Lot " in case they should desire to possess the whole or set up a claim to the same.

But for the elaborate argument submitted on the part of

the plaintiff, we would have supposed there was no serious
doubt that all the property which was held by the decree to
have been acquired by purchase was so acquired, for the
reason that it was acquired in fact either under the will or
the deed of trust we have just mentioned.   And we suppose
it is quite clear that the grantor in the one case and the tes-
tatrix in the other fully intended that the persons named
therein respectively, should take thereunder and not under
the statutes regulating the descent of real estate and the dis-
tribution of personal property in this State.   And this being
so, such clearly expressed intention is not to be set aside
and nullified by the application of technical rules, unless such
a course should be unavoidable.   The reasonable view, how-
ever, and which is supported by authority as well as reason,
is expressed in *Gilpin* v. *Hollingsworth*, 3 Md. 190, and
again in *Donnelly* v. *Turner*, 60 Md. 81, namely, "that when
a will is made, the presumption is that the testator intended
that the estate should pass by it and not by descent."   And,
of course, this applies to the property which was conveyed
under the deed of trust, as well as to that which was devised
by the will.   But the plaintiffs seek to avoid the difficulty
arising from this manifestation of intention by relying in part
upon the general rule that the law favors title by descent.
And generally, as Blackstone says, " if a man seized, in fee
devises his whole estate to his heir at law, so that the heir
takes neither a greater nor a less estate by the devise than he
would have done without it, he shall be adjudged to take
by descent."   2 *Bl. Com.* 241.   But it is also a part of this
rule that if the estate is devised with any other limitations,
or in any other shape than the course of descents would di-
rect, it is held by title of purchase.   It will appear that the
estates which the intestate took from his grandfather under
the deed and from his grandmother under her will, are very
different from the estates he would have taken from them
by descent.   Under the will the children of Mrs. Swann got
only one-half of her property, the other half having been
devised to her husband, and it will be remembered that the
share of the intestate's mother which came to him was

charged with the value of certain improvements on the Water
Co.'s lot.    But in addition to this it may be also said that
the intestate could not have taken his share of his grand-
mother's estate by descent, for if she had died intestate her
property under her ante-nuptial contract would have de-
scended to such persons as would have been her heirs at
law in case the intended marriage with Gov. Swann had not
taken place, and it is obvious, therefore, that the intestate,
who was a grandson of Gov. Swann, could not have taken
anything from her by descent.    It would seem, if this be so,
to be useless to further consider the various arguments and
authorities on which the plaintiffs relied to show that the
property acquired under the will was held by descent, be-
cause by the express provisions of the contract mentioned,
the estate of the intestate's grandmother could not have been
acquired in that manner by him, and could have been ac-
quired by him by purchase only.

We think it equally clear that the property which was ac-
quired by the intestate under the deed of trust was held by
purchase and not by descent.    Some of the reasons upon
which this conclusion is based are thus concisely stated in
the plaintiff's brief :  "(*a*) Because Gov. Swann's (the grantor)
entire estate did not pass under the deed.    (*b*) Because he
reserved to himself a life estate therein, and declared that
he held the property (except the Washington and Newport
lots) in trust for his children and grandchildren, whereas es-
tates do no descend in trust.    (*c*) Because the deed gave
the grandchildren a vested remainder in fee.    (*d*) Because
the intestate not having been devisee as to any portion of
the property of his grandfather excepted from the operation
of the deed, did not take the same interest in Gov. Swann's
lands that he would have acquired had his grandfather, the
Governor, died intestate."

As it is manifest the intestate would have taken by de-
scent a very different estate both in quantity and quality
from that which passed to him under the deed, he must take
by purchase, according to the rule we have already re-
ferred to.

But again, it was contended by the plaintiffs that under the deed of trust the grantor retained the entire fee-simple legal title to the property therein included, conveying the equitable title thereto to his children and grandchildren, and that at his death the grantees took the entire equitable title, and at the same time to them also descended the legal title, and that the two thus meeting in the same persons, coalesced, the equitable followed the legal and passed with the latter by descent. A number of authorities were cited to sustain this position. But we do not think this view applicable here, for the reason that the legal estate if not executed under the Statute of Uses nor disposed of by the will of Gov. Swann, would devolve, not upon all the children, as do the equitable estates in remainder under the deed, but upon Thomas Swann, one of the grandsons of the Governor, as the heir at common law, as provided by section 24, Art. 46, of the Code, he being the oldest surviving male descendant of the oldest son of the grantor and trustee.

The remaining question relates to the title by which the intestate acquired his share in the Water Company's lot. By the decree appealed from it was held that it came to him by descent from his mother. The defendants contend that while it is true this property was originally acquired by descent, yet by reason of the acceptance of the deed of trust and by virtue of the doctrine of election and the payment of the money by the intestate to the plantiffs as required by the deed, the plaintiffs cannot now set up a different title or any other than the one which was asserted in said deed. We are unable to discover the application of the doctrine of election to the facts before us. Stated in general terms it is that a person shall not be allowed to claim an interest under an instrument without giving full effect to that instrument so far as he can. *Thelusson* v. *Woodford*, 13 Ves. 209. The same doctrine has been frequently applied by this Court. *McElfresh* v. *Schley*, 2 Gill, 181; *Barbour* v. *Mitchell*, 40 Md. 163 ; *Albert* v. *Albert*, 68 Md. 376 ; *Kuykendall* v. *Devecmon*, 78 Md. 540, and re-

cently in the case of *Hyatt* v. *Vanneck*, 82 Md. 465. In all of the cases it will be found that there was an attempt to claim under and at the same time to repudiate a part of a will or other instrument of writing in order that all the benefits thereunder might be secured and the burdens thereby imposed might be avoided, or as in other cases, an effort to assume some position inconsistent with one before taken, which if allowed to succeed would work injustice. By the deed in question, as well as under the will, the owners of the Water Company's lot were required to pay a certain sum of money out of their shares acquired respectively under those instruments. In the case of the deed, it is apparent that the money was required to be paid by the intestate to the plaintiffs in order to equalize his share with theirs. And likewise in the will the testatrix provided that the shares of her estate devised to the owners of said lot should be charged with the payment of the value of the improvements placed thereon by her husband. But in neither case was there any intention or attempt to dispose of the lot in question. It was originally acquired by descent and, in our opinion, there is nothing in the instruments in question nor in the fact that the plaintiffs have claimed and acted under them which ought to estop the plaintiffs from taking as they now claim to do, by descent from the intestate.

It follows that the plaintiffs take the undivided half of the Water Company's lot, because it was acquired by the intestate by descent from his mother, and that the remainder of the intestate's estate, having been acquired by him by purchase under the will of his grandmother, and the deed of trust executed by his grandfather goes to the defendants.

Finding no error in the decree appealed from it will be affirmed.

> *Decree affirmed, cause remanded, costs to be equally divided between plaintiffs and defendants.*

(Decided March 26th, 1896).